# In the United States District Court for the Southern District of Georgia Brunswick Division

| | | |
|---|---|---|
| WILLIAM GREGORY, | * | |
| Plaintiff, | * | |
| vs. | * | CV 212-042 |
| WAL-MART STORES EAST, L.P., | * | |
| Defendant. | * | |

## ORDER

Presently before the Court is Defendant's Motion for Partial Summary Judgment. See Dkt. No. 41. Upon due consideration, Defendant's motion is **GRANTED**.

I. **FACTUAL BACKGROUND**

This action is predicated on Defendant's alleged misfilling of Plaintiff's prescription. See Dkt. No. 1. The relevant facts are taken principally from the parties' Statements of Material Facts and responses thereto. See Dkt. Nos. 41-4, 48-1. Where the parties offer conflicting accounts of the events in question, this Court draws all inferences and presents all evidence in the light most favorable to Plaintiff. See Hamilton

1

v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012) (citing Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011)).

Plaintiff asked Defendant to fill his prescription for Citalopram. Dkt. Nos. 41-4 ¶ 2; 48-1 ¶ 2. Defendant's pharmacy technician filled Plaintiff's prescription. Dkt. No. 41-4 ¶ 3. Defendant's pharmacist visually verified the prescription vial's contents. Id.

Plaintiff picked up his prescription medication. Dkt. Nos. 41-4 ¶ 4; 48-1 ¶ 4. Plaintiff noticed that the prescription bottle contained two (2) differently shaped tablets. Dkt. Nos. 41-4 ¶ 12; 48-1 ¶ 12. Plaintiff began taking the pills. Dkt. Nos. 41-4 ¶ 4; 48-1 ¶ 4. Thereafter, Plaintiff was hospitalized on multiple occasions. Dkt. No. 48-1 ¶ 6. After the hospitalizations and a criminal investigation, it was discovered that Plaintiff's medication bottle contained two (2) different types of pills: Citalopram and warfarin. Dkt. Nos. 41-4 ¶¶ 6-11, 13; 48-1 ¶¶ 6-11, 13. The warfarin, which was not prescribed and should not have been in the bottle, caused Plaintiff's hospitalizations.

Defendant has a multi-step process aimed at ensuring that pharmacy customers receive the correct medication. Dkt.

2

Nos. 41-4 ¶ 15; 48-1 ¶ 15. Defendant also has detailed policies and procedures which are intended to prevent or minimize errors with respect to filing prescriptions. Dkt. Nos. 41-4 ¶ 16; 48-1 ¶ 16. Defendant's pharmacy employees are supposed to follow Defendant's multi-step process, policies, and procedures. Dkt. Nos. 41-4 ¶ 15; 48-1 ¶ 15. If properly followed, the process, policies, and procedures make it "very unlikely" that a customer could receive a prescription with different medications in the bottle. Dkt. Nos. 41-4 ¶ 20; 48-1 ¶ 20. Plaintiff's expert witness was aware of "just a couple" of such instances during his thirty (30) years of practice. Dkt. Nos. 41-4 ¶ 21; 48-1 ¶ 21.

Plaintiff alleges that Defendant's employees failed to follow the process, policies, and/or procedures when they filled Plaintiff's prescription. See Dkt. No. 48-1 ¶¶ 15, 18. Plaintiff further alleges that this failure led to the misfilling of his prescription bottle and caused his hospitalizations and injuries.

## II. PROCEDURAL BACKGROUND

Plaintiff asserts that Defendant's pharmacists and/or non-pharmacist employees negligently filled Plaintiff's

3

prescription. See Dkt. No. 1. Plaintiff seeks compensatory and punitive damages.[1] See id.

Currently before the Court is Defendant's motion for summary judgment on Plaintiff's claim for punitive damages. See Dkt. No. 41. This motion is fully briefed. See Dkt. Nos. 48, 53.

## III. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Investor Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most

---

[1] Plaintiff voluntarily withdrew his claim for attorney's fees. See Dkt. No. 48, at 9.

4

favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

**IV. DISCUSSION**

Plaintiff seeks punitive damages pursuant to O.C.G.A. § 51-12-5.1. See Dkt. No. 1, at 6-7.

A. Legal Standard

Georgia law provides that:

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice,

AO 72A
(Rev. 8/82)

>     fraud, wantonness, oppression, or that
>     entire want of care which would raise the
>     presumption of conscious indifference to
>     consequences.

O.C.G.A. § 51-12-5.1(b). "Punitive damages cannot be imposed . . . without a finding of some form of culpable conduct." COMCAST Corp. v. Warren, 650 S.E.2d 307, 311 (Ga. Ct. App. 2007). "Something more than [the] commission of a tort is always required to impose punitive damages." Id. "Negligence, even gross negligence, is inadequate to support a punitive damage award." See Colonial Pipeline Co. v. Brown, 365 S.E.2d 827, 830 (Ga. 1988); Warren, 650 S.E.2d at 311. "There must be aggravating circumstances or outrage, such as spite, malice, or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton." Warren, 650 S.E.2d at 311 (citing Cullen v. Novak, 411 S.E.2d 331 (Ga. Ct. App. 1991). "In this sense, conscious indifference to consequences means an intentional disregard of the rights of another, knowingly or wilfully." Id. (citing Read v. Benedict, 406 S.E.2d 488 (Ga. Ct. App. 1991)).

AO 72A
(Rev. 8/82)

B. Application

The record lacks any clear and convincing evidence that Defendant's alleged improper filling of Plaintiff's prescription was intentional, malicious, willful, wanton, or made with conscious or deliberate indifference to the consequences. The record also lacks clear and convincing evidence that Defendant acted with an entire want of care. To the contrary, the record indicates that Defendant implemented processes, policies, and procedures in an attempt to eliminate such errors and that those processes, policies, and procedures were inadequate to stop the allegedly misfilled prescription. With respect to the particular employees who filled Plaintiff's prescription, the record only suggests that they made an error or errors in completing their tasks. The record does not demonstrate a clear pattern of misfilling errors, much less a pattern of malicious, willful, or wanton actions related to misfilling prescriptions.

At most, Defendant's actions in failing to prevent Plaintiff's allegedly misfilled prescription demonstrate gross negligence. See Mableton Parkway CVS, Inc. v. Salter, 615 S.E.2d 558, 564 (Ga. Ct. App. 2005) (overturning trial court's denial of the defendant pharmacy's request for summary judgment on the plaintiff's punitive claim where the pharmacist twice

7

filled the plaintiff's prescription with a medication different from the one that her doctor prescribed). That is insufficient to sustain a claim for punitive damages pursuant to O.C.G.A. § 51-12-5.1. See id.; Colonial Pipeline, 365 S.E.2d at 830.

Plaintiff asserts that Defendant had "a corporate policy of acceptance of errors." Dkt. No. 48, at 1. In particular, Plaintiff directs the Court to Defendant's policy to coach, suspend, and train employees who commit errors when filling prescriptions. See id. at 2-3. Plaintiff also directs the Court to evidence that Defendant focuses on "speed" when filling prescriptions. See id. at 3. Such policies do not demonstrate intentional, malicious, willful, or wanton misconduct. Nor do such policies demonstrate an entire want of care or deliberate indifference to their consequences. By contrast, Defendant's policies demonstrate an attempt to avoid the precise error that allegedly occurred here. While the evidence does demonstrate that Defendant emphasized speed when filling prescriptions, the evidence also demonstrates that Defendant simultaneously emphasized accuracy. See, e.g., Dkt. No. 46-11, at 30-31 (noting that "both accuracy and speed are required"). Thus, even after construing the evidence in Plaintiff's favor, the Court cannot say that there is any evidence supporting a theory

AO 72A
(Rev. 8/82)

that Defendant's policies showed willful misconduct, malice, wantonness, or an entire want of care.

With respect to Plaintiff's misfilled prescription, Plaintiff asserts that Defendant took only seventeen (17) seconds to visually verify the contents of Plaintiff's prescription bottle. Plaintiff further asserts that this was less than the average time of thirty (30) seconds that is typically consumed by a visual verification step. See Dkt. No. 48, at 5. Plaintiff maintains that this "warp-speed visual verification" demonstrates "an entire want of care in verifying the contents" of Plaintiff's prescription bottle. See id. at 6. However, taking approximately half of the time of an average visual verification does not demonstrate an entire want of care by clear and convincing evidence. At most, the speed of the verification step demonstrates that a jury may find that Defendant's employee was negligent, possibly even grossly negligent, when verifying the bottle's contents for seventeen (17) seconds rather than thirty (30) seconds. There is no evidence that the shortened visual verification step constituted intentional misconduct, malice, willfulness, or wantonness. Nor is there clear and convincing evidence that the employee acted with an entire want of care when completing her task.

9

Because there is no clear and convincing evidence that Defendant's "actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences," Defendant's motion for summary judgment on Plaintiff's claim for punitive damages is **GRANTED**.

V. **CONCLUSION**

For the reasons stated above, Defendant's Motion for Partial Summary Judgment is **GRANTED**. Dkt. No. 41.

**SO ORDERED**, this 2nd day of August, 2013.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)